Good morning. May it please the court. My name is Emma McBride. My partner Brea Coleman and I are Boston College law students. We are appearing under the supervision of Kari Hong. We represent petitioner Rogelio Vazquez Romero, whom we will refer to as Mr. Romero. I have four points. All will focus on the LPR issue. First, it was error to treat Mr. Romero as an arriving alien. 1101 says only LPRs who commit very specific crimes can be excluded from admission. Our briefing focused on what is the legal standard that binds the Border Patrol officer and the Chavez-Gonzalez concurrence suggests the court at some point should resolve it. But on this record, the court can accept the minimum of probable cause because the facts here involve an arrest warrant for an unknown crime. So what do we do with the BIA, excuse me, the BIA has determined that the standard is clear and convincing evidence as what they said in matter of ribbons. So do you disagree that that's the standard? Your Honor, I agree that that is the standard. And regarding the Venezuelans holding the BIA, in 1101, Congress said that Border Patrol officers are to admit all LPRs unless one of six exceptions apply. Congress could have made bad conduct instead of evidence of a commission of a crime enough to exclude LPRs, but it did not. In subsection 3, Congress said any bad conduct done outside of the country is enough to exclude LPRs. There, Congress used the term has engaged in illegal activity after having departed the United States. But in subsection 5, which relates to conduct done within the United States, Congress chose a higher standard of has committed, which must mean more than conduct. I don't think this is answering my question. So I understood your first statement to be that the standard at the border for the Border Patrol officers for determining whether one of the six statutory exceptions apply was probable cause. And that's what the Third Circuit said. But then their decision was overtaken by matter of ribbons, which said the standard was clear and convincing. And then you said, yes, you agree with clear and convincing. So is the standard for determining whether an alien falls with or an LPR falls within one of the six statutory exceptions clear and convincing evidence or is it probable cause? Your Honor, I'm sorry. I misspoke. I agree that the burden of proof on DHS is clear and convincing. However, the proposed legal standard that we're offering is that has committed should be defined as some evidence of conducts or an admission or finding. You're saying that you disagree with the BIA and your view is there's a different standard at the border. Do you have any basis for that other than the Third Circuit's decision in Doe? Well, Your Honor, in other contexts outside of immigration, the term committed has been met when there was an admission in the plea agreement, a pre-sentencing report, in-court testimony, and a court's finding. Therefore, the term has committed should be defined as some evidence of conducts or an admission or finding. An arrest warrant is less than these examples because an arrest warrant only has allegations or observations recorded by a police officer. So, just a minute. So, you're not arguing the Vartelis standard or what Vartelis said about this? Your Honor, the sound cut off. The Supreme Court in Vartelis has this footnote which says, as I understand it, that committed in this context essentially means convicted or admitted. You're not arguing that that's the standard? Yes, Your Honor. So, regarding that footnote, the Supreme Court did in dicta say that committed should be the conviction and the court can certainly resolve this issue with that standard. And we would not object, of course. But the plain meaning of committed does suggest something less, which we argue would be an admission or finding of conduct. But, all right. So, but isn't the key question here really not the standard, which as Judge Acuda says, both the BIA and this court, I believe, have said is clear and convincing. But when? In other words, it's the real question, the one that I think you need to concentrate on is whether this standard or substandard needs to be met at the border. And even if he hasn't yet been convicted, and then once he's convicted, he can then be removed on the basis of a conviction that hasn't happened at the time he's at the board. And my understanding is that the BIA will hear what they have to say, because it is a confusing case. But it seems like their position is that it doesn't matter what the, what's known at the border. All that matters is whether he is ultimately convicted. So they seem to be regarding the convicted or admitted standard as applicable or something like it. But it only applies at the point of the IJ hearing, not at the border. So that seems to me to be the key question. Are you going to address that? Yes. So the issue that we are proposing is that legal standard of an admission or finding is what the border patrol officer will need to find an LPR not admissible. But the BIA says otherwise. The BIA says otherwise in Valenzuela's case. Valenzuela-Felix. So why shouldn't we be bound by their interpretation? Well, Your Honor, no court and not even the Fifth Circuit has given Chevron deference to Venezuela-Felix. And this is because... When they're applying for admission, can the officer at the border say, well, I'm going to regard you as applying for admission and just parole you in. And then we'll see whether you get convicted or not. I mean, that's essentially the issue. And it's a hard question. Yes. And that's actually my third point. This fight matters. And Mr. Romero is an LPR. So if the border patrol officer had properly admitted him into the country, the DHS never would have started immigration proceedings. Mr. Romero has only one alleged CIMT conviction. Why wouldn't they? I mean, if he's convicted, I suppose they can still remove him if he's deportable, depending on what his record is, which I don't know if that was something before us. Obviously, there is an easier standard for the government if he's not admitted to exclude him. But they could still have immigration proceedings if they're not precluded, correct? Yes, correct, Your Honor. And our request of remedy is to remand and let the DHS charge applicable deportability grounds. So if he hadn't been convicted, so he's paroled in, let's say he hadn't been convicted. So he didn't fall into one of those categories. The BIA says there wouldn't have been any prejudice to him. He could have been deemed admitted at the border and get whatever benefits he gets as a returning LPR. Well, Your Honor, yes, perhaps the BIA could rescind on the charges, but he's been fighting for 12 years to fix that mistake at the border. And this has cost him time and money. And he's actually the lucky one. In Yepes-Vargas, the LPR there never had a chance to argue this issue. He was pro se before the immigration court and BIA. When he finally got lawyers before this court, a panel says challenge was not exhausted. I still I still need you to explain to me why BIA's opinion saying that it's what was true at the time of the IJ decision, not what was true at the border is what matters. Why not? Well, Your Honor, Venezuela Felix and Munez actually both support our argument. And as a factual matter, Munez had the specifically named crime of aggravated assault named on the arrest. So you're not going to you're not taking on the bones. Well, if you think we should decide it on a much narrower ground. Um, is that what you're telling us that that that we can assume it was correctly decided and simply decide that the standard wasn't met here? Yeah, you can on you can rule on the narrow issue of an arrest warrant for an unknown crime does not match the factual cases, the factual pattern in balance. And in balance for the Felix, the indictment named the offense of bulk hash smuggling, which is an inadmissible CIT offense. 1101 requires that the border patrol officer know that the committed offense is identified under to 1282. Border Patrol officer has to know that the LPR committed a CIT offense or other inadmissible crime that is expressly identified in to 1282. By contrast, on this record, Mr. Romero would still win because his arrest warrant was for an unknown crime. Every other case have the specific inadmissible offense identified. The court can stop here. As a legal matter, if the court accepts that the term has committed is met with an admission or finding the arrest warrant for even a known crime won't meet that standard, because an arrest warrant is not tested evidence. Without knowing that the arrest warrant was for a CIT, the border patrol officer improperly paroled Mr. Romero when he should have admitted him as an LPR. Suppose he knew that it was for a CIT and that he had something more than an arrest warrant, but he didn't have a conviction. You would say that was good enough, even though statute, and that depends on how you read the statute, I suppose, right? Yeah, so I have two answers, depending on the legal standard the court chooses to adopt. If the court were to adopt the lower probable cause standard, on this record, Mr. Romero would still win because his arrest warrant was for an unknown crime. And every other case have the specific crime identified in it. But if the court accepts that the term committed is met with an admission or finding, an arrest warrant for even a known crime won't meet that standard, because an arrest warrant is not tested evidence. You want to reserve time? Yes, Your Honor. Thank you. Mr. Tennyson? Hi. Yes, Mr. Tennyson. Let's see. May it please the court, Robert Tennyson for the government. I want to make three points. I think, first, I don't think there's any interest in getting into Mr. Romero's arguments about withdrawal of counsel or petty theft being a morally turpitudinous offense. I think that neither of those have been exhausted. There's not much to say on the merits. So, with that, unless the court has specific questions with regard to those two issues, I think the real issue is whether or not, as a returning LPR, Mr. Romero could be designated by the border patrol officer as an applicant for admission. So, it would be helpful to me to start with the statute. The statute says that an alien lawfully admitted should not be regarded as seeking admission. So, he's at the border, unless. So, he's not to be regarded at the border. If he has committed an offense, I would provide a section of M.A. 2.A. 2. And your position depends upon the fact that he can be essentially, or is a true, he is regarded as seeking admission and, therefore, not admitted but paroled on some guess that he has, that subsection 5 applies. I don't know whether you say there's any standard at all or simply any warrant or even a warrant that doesn't specify the crime or what. But the real question is whether you can defer that decision to the IJ termination, which wouldn't give me that much cause, except that it's going to depend upon something that happens after he's actually either admitted or not admitted at the border. And he maybe had committed a crime abroad. And CBP did not know, or Customs and Borders Protection, did not know whether or not, at that moment, he had committed the offense, although they had some information with regard to it. At that point, they could defer the inspection for a period of time, maybe even parole him into the country and have him come back after they found the information. And then, you know, treating him as an arriving alien because they had the information. And ultimately, that determination comes down to a charge before, you know, a determination comes down to a charge before the immigration courts. They could find, well, they could have looked into it and found that it's not the case. And if that were the case, a deferred inspection, it's a no harm, no foul type of problem. Same thing here. Say Mr. Romero had been paroled in and the prosecutor decided not to prosecute him on the charge. Then DHS could have turned, you know, DHS would have then decided to have, you know, dropped the parole. He would have continued to be treated as an LPR, just as he was after he was paroled in. Effectively, there is no difference in his treatment if he is paroled in or if he is not. The time when it matters. But here, everything is turning on something that happened after he was paroled in. Right, Your Honor. So, one question. To me, this somewhat comes back to the Vartiello's footnote and whether the DHS and BIA accept that he ultimately has to be either convicted or admit the crime in order to meet subsection 5. Right. I would think that under this court's previous case of Gonzaga-Ortega, you know, along with Vartelis and sort of the language about not having to convene a high power court, there's no reason for the immigration officer at the port of entry to have to make the full determination at that point to convene some sort of hearing to gather all of that information and then make the admissibility determination. That would be strange and very peculiar at the port of entry if that were to occur. I think the question that this court is honing in on is, can an individual for whom there's some suspicion that an individual has committed the crime outside the country prior to leaving the country and then coming back has been convicted. If there's some reason why at that point the board has to take or the immigration officer has to take some other tact or has to comply with some additional standard. Let me back up a minute. If committed means, as the Vartelis footnote suggests, and I note that there's a recent opinion, Barton, which talks about some of this somewhat, I don't know whether you've looked at it and whether exactly how it's relevant, it's rather confusing. But in any event, if it's true that he has, in order to have committed the offense, he has to have either been convicted or admitted it, then he, at the time he's at the border, does not meet the criteria, right? If what Vartelis means is that, if what Vartelis means is committed is the flow-through provision, meaning that you have to have been either admitted to the conviction, admitted to committing the offense, or have been convicted of the offense. If that is the case, then the immigration officer could not have taken the step he did. But it doesn't look like Vartelis necessarily implies that kind of, necessarily means that. I think Vartelis, for one reason, because under the statute, under clause 5 in 1101A.13c, the language is specifically that the alien has committed an offense identified in the chapter. Not has not committed, has committed a criminal grounds of inadmissibility in the chapter. If it was the criminal grounds of inadmissibility, that would include both, it would include not just the offense, but the sort of standard of proof that goes along with it, right? The, either, you know, in the drug cases, a reason to believe, or in the cases for CIMTs, either the admitting to committing, to having committed the offense, admitted to having committed the elements of the offense, or having committed, or having been convicted of the offense. But what the statute seems to hone in on is the offense that is under that. So that means either a drug offense or a CIMT. You're really saying Vartelis was, Vartelis footnote is wrong, and you may be right about that. But it is the Vartelis footnote. It is the Vartelis footnote. I don't think it's essential to the Vartelis decision. I think it's an additional, I think it's, it could be a stronger statement than it needs to be. We'll put it that way. All right. So just to continue. If, if you're right, then, then why is he being paroled in for conviction? Or why does it matter whether he was convicted or not? Because apparently, if committed an offense doesn't mean he had to be convicted or admitted, then presumably you could start the removal proceedings immediately and decide whether he, on some unclear and convincing evidence, whether he committed an offense without regard to whether he was convicted. So even if they dropped the conviction, it wouldn't matter, would it? On your theory of what committed means. On my theory, ultimately, it does come down to someone has to show that he committed the offense by clear and convincing evidence. And that's done in an immigration proceeding. What the immigration officer is doing is something like a charging decision. It's a matter of prosecutorial discretion in the same way that if the immigration officer had written out an NTA that day and handed it to him at the port of entry and said, you know, I believe you committed the offense. And, you know, I don't know how he would have written it out to include a charge since he wasn't convicted yet. But at that point, the crucial immigration, the key factor of this is that it's treated like a charging decision. So at the back end, he goes to immigration proceedings and the government has to show that that charge of that charge, that identification of him as an arriving alien is correct by clear and convincing evidence. That is, at the time he arrived at the port of entry, that he had committed the offense. Now it's now the evidence to show that will be the ultimate conviction for the event. Right. On my theory, it wouldn't on my theory, it wouldn't have had to been right. If, say, for example, he appears in immigration proceedings, say the prosecutor releases the charges, he appears in immigration proceedings and in immigration proceedings, the immigration judge says, you know, you know, you know, you know, gives him the warnings and says, if you're going to admit to the offense, you have to do X, Y and Z. And on the stand, the petitioner says, I committed this offense or he says, I committed each of these elements. Right. I committed petty theft, even if I wasn't even if I wasn't prosecuted for it. Then at that point, you're right. Even if the charge is dismissed, there's a way to go back and show that he had committed the offense and also that he has that he's that he has been charged. Likewise, if he if he is, say, in the interim, he commits another offense while he's in the country, while he's in immigration proceedings. Presumably, go back and have him show evidence that he committed the offense and presumably DHS could rely on that second conviction that even though it hadn't happened at the time he was at the border. Right, because it's a it's a continuing application. So in the same way, if someone is put into deportability proceedings, and even if there's one ground for deportability at the time, they're charged later so that they can get their convicted of something else or there's another deportability ground that arises. DHS can amend the charge to add that in until the time of the immigration. But the statute here says that he's not to be regarded as seeking admission and admission means with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration office. So I don't see. I mean, your notion that it doesn't matter whether he's been convicted yet is maybe seems a little strange, but but your notion that it could be something that happens after his law, his entry of the alien after inspection and authorization, even though he's supposed to be regarded as seeking an admission seems a little Let me clarify. I think I think if DHS, if, say, for example, he wasn't convicted of the offense, he say he say he pleads to something else. But say he admits to having committed the offense on the stand. He admits to committing the offense or DHS has evidence to show by clear and convincing evidence that he committed the offense. Then the arriving angling alien charging decision stands. That doesn't necessarily mean that he's going to be removable under that removable on that ground, but he may be removable on a different one. That's the question here. Yes. But the question as to whether he fell within one of the exceptions and so can be regarded as seeking admission appears from the language that the offense at least has to be committed prior to the point where he is knocking on the door of the port of entry. Do you disagree with that? That is correct, Your Honor. There is a basis for regarding him as an applicant for admission has to be the commission of offense before he's knocking on the door. So here's the key question, which is one that Mr. Bride was concentrating on. So what does the on your theory that you can defer the question ultimate question of what he was committed, whether he committed it? Is there any standard at the border or in terms of what has to be shown? There isn't. It's a matter of pure prosecutorial discretion the same way as because ultimately it's a charging decision. It's a decision as to what goes into the notice to appear when he is charged. It has no effect on his LPR benefits or anything having to do with him being an LPR once he comes into the country. All it affects is how he is charged and the basis for which he is found removable. Isn't it true that it may be whether he can be charged? I mean, if he committed only two offenses, they were both CIMTs. He can be charged with only one of them. He's not an LPR, but he would have to be charged with two of them. He was an LPR, so he may not be charged. That is correct. But again, that charging decision as to whether to treat him as an arriving alien and ultimately have to bear that burden of proof of showing that he committed the offense prior to coming into the country. Right. That burden of proof is something that DHS has to assume by doing that. So in this instance, they had an arrest warrant for an unspecified crime, but you would say it didn't even matter if they had an arrest warrant. As I understand it, you would say if the person at the border just for some reason thought he knew this guy and he committed an offense or even had no reason, he could still do it. It sounds like you're saying that there's no burden of proof at the time of his attempted reentry back into the United States, but that the burden of proof is really going to be met only at the time of the removal proceeding. Is that what I'm hearing? That is essentially correct, Your Honor. But let me stop and go back to this point about a warrant for an unspecified arrest or for an unspecified crime, because I want to correct that. What the petitioner is doing, what Mr. Romero is doing, is creating a logical fallacy. His argument that the warrant was for an unspecified crime is based on the lack of information in the I-213 specifying the crime. That doesn't mean he's arguing from an absence of evidence about what that warrant says to evidence of absence, that is, a warrant that doesn't have that information, and that's incorrect. That's, you know, I guess what, logic 101. But going beyond that, if you look at the I-213 in which the CBP officer identifies him as having committed a crime involving moral turpitude, which would indicate that he had to have some information about what the offense was in the warrant, and that he ends up handing the individual over to the Los Angeles Police Department, that it's not just, oh, well, he has something, maybe it's a parking ticket, maybe it's something awful, I'm just going to, you know, I'm just going to treat it as a CIMT and treat him as an applicant for admission. But on your theory of the case, he could do that, even if he didn't have a warrant. On your understanding, if there's no stanza at the border, it wouldn't matter if it were true. It wouldn't matter, but again, this is no different than if there, you know, the board even indicated in Valenzuela Felix that if CBP started, say, just stopping people at the border and paroling them in willy-nilly, it would rethink this. It's like footnote 11 or 12 of that decision, that this is not a license for CBP to go and abuse that kind of authority. And in those kinds of circumstances, that the board would take a look at those cases. But this isn't one of those cases. The board clearly didn't find it to be one of those cases. But putting that aside, that's correct. It's a charging decision at the border. There isn't a particular standard for it, just like there's no particular standard for issuing an NTA. But even if there were a standard, even if this court were to adopt the probable cause standard that the Third Circuit has, the warrant that is identified by the I-213 is more than adequate to meet that standard. In fact, it's the same sort of warrant that was at issue in Doe. If the court has no further questions for me, the government rests. Okay, thank you. Ms. Coleman. Hello, Your Honor. I have three quick points. But before I wanted to address the government's last point, it is unclear what happened at the border. However, under Kibet, this court is only limited to the information and administrative record. The only information is on AR-210, which states that, quote, Romero has an outstanding warrant from Orange County Sheriff's Department, end quote. First, in 1101, Congress said that Border Patrol officers are to omit all LPRs unless one of six exceptions arise. And Gonzaga-Ortega recognized that there is no established remedy if a Border Patrol officer makes a mistake. Congress could have made bad conduct instead of evidence of a conviction of a crime, enough to exclude LPRs, but it did not. In subsection 3, Congress said any bad conduct done outside of this country is enough to exclude LPRs. There, Congress used the term, quote, has engaged in a legal activity after having departed the United States, end quote. But in subsection 5, which relates to conduct done within the United States, Congress chose the higher standard of has committed, which must mean more than conduct. That's why the Chavez-Gonzalez concurrence got it right. Whatever the term has committed means, it must be more than conduct, which we argue is met with a finding or admission. Then in Gonzaga-Ortega, I thought in that case, we said, well, DHS has to make an on-the-spot decision. It doesn't require any due process. So how would they make a determination, for example, by clear and convincing evidence that he had committed an offense? Wouldn't that be contrary to Gonzaga-Ortega? I'm sorry, Your Honor, could you repeat your question? In Gonzaga-Ortega, we justify, we explain why there was no right to an attorney on the border on the grounds that the Border Patrol agent had to make an on-the-spot decision. So there really wouldn't be an ability to determine whether the individual had committed an offense by clear and convincing evidence. That seems to be contrary to what we said should take place at the border, which is just an on-the-spot, quick decision that doesn't require attorney representation. Yes, Your Honor. But however, Gonzaga-Ortega also recognized that there is no established remedy if a Border Patrol officer makes a mistake. And that is why it is crucial that an arrest warrant for an unknown crime cannot meet the DHS's burden. Lastly, I would like to remind this court that the case can be resolved on narrow factual grounds. Mr. Romero's arrest warrant for an unknown crime cannot meet the DHS's burden by clear and convincing evidence to show that Mr. Romero, an LPR, committed an offense that is a CAMT. The government's position is that there is no standard at the border. What about that position? Sorry? Your Honor, the best answer that I have is that in the DOE, they said that the standard is probable cause. However, that question has not been answered in court, and it is still a novel issue. We are requesting that the standard should be omission or conduct. Say what? I'm sorry? Sorry, our standard is that there should be some form of omission or conduct. What does conduct mean? That's the question. What was his conduct? Your Honor, our proposed legal standard is that conviction is the ceiling of what is needed, and probable cause is the floor. An arrest warrant to an unknown crime is not enough for probable cause because arrest warrants do not contain omissions or findings. If you disagree and accept probable cause, we still win on this record. This record is an arrest warrant for an unknown crime. That lets this court resolve this case in our favor using the minimum legal standard of probable cause. Okay, thank you very much. Judge LaMalle, I'm sorry, go ahead. I'm sorry. Wouldn't your position, Ms. Coleman, be contradicted by the BIA's decision in the matter of Venezuela Felix who had reversed an IG that determined by what I believe is your position that the proper time for the government to make its determination as to whether the alien was an arriving alien was at the time he sought entry into the United States. That IG decision was reversed by the BIA. Am I misinterpreting your position that it's similar to the IG in that case? I'm sorry, Your Honor. The last part of your question came up. Can you repeat that? Is your position the same as the immigration judge in the matter of the Venezuela Felix case that the proper time for the government to make its determination as to whether the alien was an arriving alien was at the time he sought entry into the United States? Is that consistent with what you're saying here? Yes, Your Honor. And actually, Venezuela Felix and Munoz both support our argument. As a factual matter, Munoz had the... But the BIA reversed that IG's determination. Yes, but in Venezuela Felix, the indictment named the offense of bulk cash smuggling, which is an inadmissible CIMT offense. And on this record, Mr. Romero would still win because his arrest warrant was for an unknown crime. And every other case has a specific inadmissible offense identified. Thank you. Okay. Thank you both very much. Another complicated immigration case. Esquez Romero v. Barr will go to Huynh v. Barr. And after that case, we will take a short break. Thank you.
judges: Berzon, Ikuta, Lemelle